Timothy M. Hamilton (SB#90270)
**WALKER, HAMILTON & WHITE**
50 Francisco Street, Suite 460
San Francisco, CA  94133-2100
Telephone: (415) 986-3339
Facsimile:   (415) 986-1618

Carolyn L. Rosenblatt (SB #83752)
**LAW OFFICES OF CAROLYN ROSENBLATT**
711 Mission Avenue
San Rafael, CA 94901
Telephone: (415) 459-0413
Facsimile:   (415) 459-3682

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Martha Thompson and Chris Thompson,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>United States of America, and DOES 1 to 50,<br><br>　　　　Defendants. | CASE NO.:<br><br>COMPLAINT FOR DAMAGES:<br><br>WRONGFUL DEATH<br>NEGLIGENCE<br>WILLFUL MISCONDUCT<br>TORT PER SE - - ELDER ABUSE<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs allege:

### FIRST CAUSE OF ACTION
(NEGLIGENCE)

1.     This action arises under the Federal Tort Claims Act, Sections 2671 through 26780 of Title 28 of the United States Code.  This Court is vested with Jurisdiction pursuant to Section 1346(b) of Title 28 of the United States Code.

2.     Plaintiffs Martha Thompson and Christopher Thompson reside and at all times relevant herein did reside in the City of Mill Valley, County of Marin, City and County in the Northern District of California.  The acts and omissions occurred at the

1   San Francisco Veterans Administration Medical Center Nursing Home Care Unit, (Fort

2   Miley), hereinafter "SFVANHCU," in the City and County of San Francisco, State of

3   California, which is in the Northern District of California.

4        3.        At all times relevant herein, Plaintiff Martha Thompson was the lawful

5   spouse of decedent Ollis Thompson, hereinafter "decedent," and Christopher

6   Thompson was the natural son of decedent, Ollis Thompson.  Both Martha Thompson

7   and Christopher are the successors in interest of Ollis Thompson.

8        4.        Upon information and belief, plaintiffs allege that at all times relevant,

9   defendants DOES 1 to 50 were and are licensed or unlicensed care givers, including

10  but not limited to registered nurses, licensed vocational nurses, certified nurse's

11  assistants, nurse's assistants, therapists, technicians, and were either the employees of

12  other defendants or independent contractors hired by them, and whose job duties

13  included providing care to decedent during his stay at SFVANHCU for "respite care".

14       5.        The true names and capacities, whether individual, corporate, associate,

15  or otherwise, of defendants named herein as DOES 1 to 50, inclusive are unknown to

16  plaintiffs at this time, and plaintiffs therefore sue said defendants by such fictitious

17  names.  Plaintiffs will seek leave to amend this Complaint to allege their true names and

18  capacities when the same have been ascertained.  Plaintiffs are informed and believe,

19  and thereon allege, that each of the defendants designated herein as a DOE is

20  responsible in some manner or is otherwise legally liable to plaintiffs for the injuries

21  complained of herein.

22       6.        At all times herein mentioned and in doing the things herein alleged, each

23  of the defendants, including those sued by fictitious names, may have acted as the

24  agents, servants, employees, owners and/or representatives of each of the their co-

25  defendants, acted within the course and scope of said agency, employment, ownership

26  and/or representation, and acted with the knowledge, consent, approval, and/or

27  ratification of their co-defendants.  In particular, at all times material herein, defendants,

28  individually and through their officers, directors, and/or managing agents, including but

1  not limited to the administrator(s), medical director(s) and director(s) of nursing, either

2  had advance knowledge of the unfitness of its employees, contractors and recklessly

3  employed said employees and retained said contractors with a conscious disregard of

4  the rights and safety of others, and authorized or permitted the wrongful conduct alleged

5  in this complaint or were personally guilty of oppression, fraud, malice, and/or

6  recklessness.

7       7.    Decedent had been treated at SFVANHCU, 4150 Clement Street, San

8  Francisco, California for many years, and had, from time to time had "respite care" at

9  that facility, which enabled his caretaker son, Christopher, to have a break from the

10  seven day per week schedule of caring for decedent.  On June 13, 2006, decedent was

11  admitted for respite care to the SFVANHCU, which is operated by the Department of

12  Veterans Affairs, an agency of Defendant United States of America.  Decedent was a

13  ninety-two year old wheelchair bound inpatient from his admission to the NCHU to the

14  time of his discharge from respite care, twelve days later.  He was infirm and disabled

15  from anemia, and other chronic conditions, one of which resulted in his having a

16  tracheotomy, needing frequent attention and suctioning, and he required 24 hours a day

17  care.  At the time of his admission, he loved to sit up in his wheelchair, talk with the

18  people around him and to eat meals.  He was able to feed himself.  He went to a senior

19  center on a daily basis to participate in programs of senior socialization and activity.  His

20  weight was stable, though he was chronically thin.  His skin was intact.  He was in no

21  acute distress, and was not brought to the NHCU because he needed hospitalization,

22  but because his family needed respite, a benefit offered by the SFVANHCU to this

23  veteran.  Decedent had approximately five previous admissions for respite care at the

24  NHCU, and had returned home to be cared for by his family each time, without incident.

25       8.    On June 13, 2006, Christopher Thompson brought decedent to the NHCU

26  and advised Defendant's admissions personnel as to how to best mange his father's

27  daily routine, to which decedent was accustomed.  He specifically requested that his

28  father be allowed to be up in his wheelchair, dressed and permitted to participate in

1  daily activities on the unit since decedent had previously loved to spend his days at an

2  adult day health center which provided daily activities.

3    9.    The SFVANHCU, by and through its agents, employees and staff, were

4  negligent in their failure, among other things, to supervise, manage, oversee, control,

5  attend to, protect and care for decedent, a patient in their care and custody.  Decedent

6  was, at all times, totally dependent on Defendants, and each of them, for safety, and all

7  activities of daily living.

8    10.    As a legal result of such negligence, decedent was neglected in his

9  nutrition and was essentially deprived of food for the duration of his stay for respite care

10  at the NHCU, neglected in his need for fluids, neglected in the care of his skin,

11  neglected in the necessary care of his tracheotomy tube, into which food was permitted

12  to pass, threatening and compromising his respirations, and generally neglected in his

13  need for daily activity, all of which resulted in his becoming severely weakened, unable

14  to communicate, unresponsive and ill.  As a further result of such neglect and

15  negligence, decedent was caused to become severely emaciated and malnourished,

16  severely dehydrated with kidney failure, severely damaged with skin breakdown and

17  development of a Stage 2 decubitus ulcer at his sacral area, damaged in his lungs, into

18  which matter was aspirated and pneumonia developed, and was so weakened as to be

19  barely able to communicate and unresponsive.  The same day he was released from

20  the NHCU, decedent was taken by ambulance to Marin General Hospital, where he was

21  admitted on an emergency basis for treatment of the aforementioned neglect and its

22  numerous effects, all to his serious physical damage, pain and suffering.  As a legal

23  result of the severe neglect and damage to decedent's system, he survived only about

24  three months, and was never able to regain the status of health he had enjoyed prior to

25  June 13, 2006.  He died on October 2, 2006.

26    11.    As a legal result of the reckless neglect, decedent suffered physical pain

27  from hunger, thirst, the matter aspirated into his lungs, physical pain from the untended

28  decubitus ulcer on his sacrum, and general emotional distress from being unable to

-4- Complaint For Damages

communicate as a result of improper care of his tracheotomy tube, as well as emotional distress resulting from the physical pain, aforementioned.  As a legal result of decedent's death plaintiffs have suffered loss of the society, companionship, comfort, and affection of decedent.

12.    Prior to Ollis Thompson's death, Martha Thompson and Christopher Thompson served claims upon the Department of Veterans Affairs, alleging elder neglect and negligence.  On October 6, 2006, plaintiffs served amended claims for wrongful death.

## SECOND CAUSE OF ACTION
### (RECKLESS MISCONDUCT)

13.    Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through 12 of this complaint as though fully set forth herein.

14.    Because decedent was a patient of the San Francisco Veterans Administration facility, defendants United States of America and DOES 1 to 50, in their respective capacities, had duties under the federal and state regulations and laws designed and implemented for the protection and benefit of patients of skilled nursing facilities, such as decedent.

15.    At all times relevant, said defendants and each of them knew of the existence of these regulations and laws and knew that the lives and health of residents such as decedent were at risk whenever said defendants failed to meet the duties imposed by such laws and regulations.

16.    Said defendants and each of them ignored the state and federal regulations and laws in that they wholly failed to provide decedent with 24-hour nursing care and physician services necessary to attain and maintain decedent's highest practicable level of physical, mental, and psycho social well-being, including but not limited to:

a.    Failure to fully implement of decedent's care plan (California

1    Code of Regulations, title 22, section 72311(a)(2)) et seq.

2    b.    Failure to provide nursing services by ensuring the facility is

3        competently staffed, organized and equipped to provide

4        skilled nursing care to patients on a continuous basis

5        (§72309).

6    c.    Failure to identify patient care needs (§72311(a)(1)(A)).

7    d.    Failure to continually assess the patient's needs

8        (§72311(a)(1)(A)).

9    e.    Failure to employ nursing service personnel in at least the

10        number and with the qualifications determined to be

11        necessary in order to provide the necessary nursing services

12        for patients admitted to care (§72329(a)).

13    f.    Failure to ensure that the sufficient number of nursing

14        service personnel are on duty in at least the number and

15        with the qualifications to provide the necessary services for

16        patients admitted to care (§72329(a)).

17    g.    Failure to employ an adequate number of qualified personnel

18        to carry out all the functions of the facility (§72501(e)).

19    h.    Failure to provide for competent supervision of facility staff

20        (§72501(e)).

21    17.    Said defendants' conduct as set forth in paragraphs above constituted

22    breaches of the respective duties each owed to decedent.

23    18.    These breaches were intentional and/or in reckless disregard for the

24    probability that severe injury would result from defendants' failure to comply as required.

25    Said defendants knew or should have known that there was a substantial probability

26    that severe injury would result from their respective and collective failures to perform

27    their required duties.

28    19.    The conduct of defendants as alleged herein constitutes neglect as

defined at Welfare & Institutions Code §15610.57 in that defendants failed to exercise the degree of care that a reasonable person having care and custody of decedent would exercise.  Because the neglect was reckless or done with oppression, malice and/or fraud, and put a premium on expediency and non medical consequences, over the well being of decedent, this action falls within the statutory scope of Welfare & Institutions Code 15673, and as such, this action cannot be considered one based upon professional negligence.  Plaintiffs also allege that by its very nature, the respite care Defendants held themselves out to provide to decedent was custodial in nature.

20.    As a result of the foregoing, defendants are subject to heightened civil remedies pursuant to the provisions of California Welfare & Institutions Code section 15657, et seq, including but not limited to attorney's fees and costs.

WHEREFORE, plaintiffs pray for damages as set forth below.


**THIRD CASE OF ACTION**
(TORT PER SE - - ELDER ABUSE)

21.    Plaintiffs hereby incorporate by reference the allegations set forth in paragraphs 1 through 20 of this complaint as though fully set forth herein.

22.    At all times herein mentioned, decedent was an "elder" over sixty-five years of age, and within the class of persons protected by California Penal Code §368.

23.    At all times herein mentioned, personnel associated with the SFVANHCU were persons having the care or the custody of an elder, that is, decedent, within the meaning of California Penal Code §368.

24.    At all times herein mentioned personnel associated with the SFVANHCU had the care, custody, or control of decedent or stood in a position of trust with decedent during his stay for respite care.

25.    Personnel associated with the SFVANHCU, as care custodians, willfully caused or permitted the person and health of decedent to be injured and recklessly and/or willfully caused or permitted decedent to be placed in a situation such that his

1  person and health were in danger.  Specifically, personnel associated with the

2  SFVANHCU failed to properly supervise, manage, protect, restrain, oversee, control,

3  and care for decedent or to closely observe him despite the knowledge that he was at

4  risk for pulling out his tracheotomy tube, at risk for malnutrition and dehydration, at risk

5  for skin breakdown, at risk for confusion and at risk for irreversible deterioration of his

6  overall health if his basic safety, nutrition, hydration, and skin care needs were not met.

7      26.    The conduct described above constitutes a violation of California Penal

8  Code §368, subsections (a) and (b).

9      27.    The conduct described above created circumstances or conditions likely to

10  produce great bodily harm or death, and defendants willfully caused or permitted these

11  circumstances or conditions to exist.

12      28.    As a direct and legal result of the violation of California Penal Code

13  §368(b), decedent was severely neglected, resulting in extreme malnutrition, rapid

14  weight loss, severe dehydration leading to kidney failure, rapid skin breakdown leading

15  to a sacral, stage 2 decubitus ulcer, aspiration of food into his tracheotomy, loss of his

16  tracheotomy tube for an undetermined amount of time during the night, aspiration

17  pneumonia, and overall decline in his general health leading to a hastening of his death.

18  While in Defendants' facility for respite care, decedent was caused to suffer physical

19  pain and emotional distress from the effects of neglect for his entire stay, and for the

20  period of approximately three months afterwards, until his death.

21      29.    Defendants' violation of California Penal Code §368, a statute embodying

22  the public policy of the State of California, was reckless and/or in conscious disregard of

23  decedent's health and welfare.

24      30.    In doing the things alleged above, defendants, and each of them, acted

25  with recklessness, fraud, malice, and/or oppression.

26      31.    Plaintiffs hereby demand a jury for all causes of action stated above.

27      WHEREFORE, plaintiffs, and each of them request judgment against defendant

28  United States of America and DOES 1 through 50 as follows:

1.      Damages in the amount of $150,000 for each plaintiff;

2.      Unpaid medical expenses incurred for emergency care and follow up care at Marin General Hospital after discharge from SFVANHCU.

3.      Plaintiffs' costs of suit;

4.      Attorney's fees and;

5.      Such other and further relief as the Court may deem just and proper.

6.      Enhanced remedies as permitted by law.

JURY TRIAL IS DEMANDED BY PLAINTIFFS.

DATED:  June 19, 2007                    WALKER, HAMILTON & WHITE


                                         By:_____
                                              Timothy M. Hamilton